UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-CV-22518-RAR

LAZARO EMANUEL AVILA ESCOBAR,

      Petitioner,

v.

WARDEN, *Krome North Service Processing Center*, et al.,

      Respondents.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** comes before the Court upon Petitioner Lazaro Emanuel Avila Escobar's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), [ECF No. 1], filed on April 11, 2026. Petitioner alleges that he has been unlawfully committed to detention in the Krome North Service Processing Center in Miami, Florida and seeks that the Court order his immediate release, or, in the alternative, that the Court order a custody redetermination hearing before an Immigration Judge. *See* Pet. ¶ 1, Prayer for Relief. The Court having reviewed the Petition, the relevant submissions, and applicable law, it is hereby

**ORDERED AND ADJUDGED** that the Petition, [ECF No. 1], is **DENIED** for the reasons set forth herein.

## BACKGROUND

Petitioner is a native of Cuba who has resided in the United States since 2021. Pet. ¶¶ 1, 16. On June 22, 2023, Petitioner filed a Form I-589, Application for Asylum and Withholding of Removal. Pet. ¶ 17. On July 21, 2023, he appeared for his biometrics appointment with USCIS and was subsequently issued an Employment Authorization Document. Pet. ¶¶ 17–18. On April

2, 2026,[1] Petitioner was arrested after a verbal dispute with his wife. Pet. ¶¶ 1, 19. Though his case was dismissed the following day and no charges were imposed, immigration officials lodged a detainer for Petitioner to remain in custody and served a Notice to Appear, charging him with removability under 8 U.S.C. § 1182(a)(6)(i) and 8 U.S.C. § 1182(a)(7)(i)(I). Pet. ¶¶ 20, 21; Resp., [ECF No. 4] at 1–2. Petitioner was transferred to Krome North Service Processing Center in Miami, Florida where he is currently detained. Pet. ¶ 21.

On April 11, 2026, Petitioner filed this action requesting that the Court (1) assume jurisdiction over this matter and order that Petitioner should not be transferred outside of the Southern District of Florida during the pendency of the Petition; (2) "[i]ssue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner under reasonable conditions of supervision; or, in the alternative, order an immediate individualized custody redetermination hearing before an Immigration Judge within seven (7) days, at which the Government bears the burden of demonstrating by clear and convincing evidence that Petitioner poses a danger to the community and by a preponderance of the evidence that he presents a serious risk of flight"; and (3) declare Petitioner's detention violates the Fifth Amendment Due Process Clause. *See* Pet., Prayer for Relief.

On April 14, 2026, the Court issued an Order to Show Cause and Omnibus Order ("Order to Show Cause"), [ECF No. 3], directing Respondents "to show cause why the Petition should not be granted and [to] file all documents and transcripts necessary for resolution of the Petition." *See* Order to Show Cause at 2–3. On April 17, 2026, Respondents filed a Response to the Court's Order to Show Cause ("Response"), [ECF No. 4]. Petitioner subsequently filed a Reply, [ECF No. 8]. Accordingly, the Petition is fully briefed and ripe for review.

---

[1] Respondent contends that Petitioner was arrested on April 1, 2026. *See* Resp., [ECF No. 4] at 1.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" have the authority to hear applications for habeas corpus by any person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Prieser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973). Section 2241 authorizes federal courts to hear challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (noting that "28 U.S.C. § 2241[ ] confers jurisdiction upon the federal courts to hear" challenges to the "lawfulness of immigration-related detention").

## ANALYSIS

Petitioner maintains that he is not subject to § 1225(b)(2), and therefore his continued detention exceeds statutory authority. Pet. ¶¶ 30–40. He claims that his detention violates the Administrative Procedure Act and the *Accardi* doctrine, *see* Pet. ¶¶ 41–45, as well as the Fifth Amendment Due Process Clause. Pet. ¶¶ 46–55. Petitioner also maintains that prudential exhaustion is excused because it would be futile. *See* Pet. ¶¶ 28–29. Respondents assert that the Court lacks jurisdiction to consider the Petition pursuant to 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9). *See* Resp. at 11–16.

Accordingly, there are five questions before the Court: (1) whether the Court has jurisdiction to review the Petition; (2) whether Petitioner has failed to exhaust his administrative remedies; (3) whether Petitioner is properly detained pursuant to § 1225(b)(2); (4) whether Petitioner's mandatory detention is consistent with the Due Process Clause; and (5) whether

Petitioner's detention is in violation of the APA and the *Accardi* doctrine.  The Court addresses each question in turn.

### I.   The Court has jurisdiction to consider the Petition.

Respondents argue that 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) bar Petitioner's claims.  *See* Resp. at 11–16.  Although jurisdiction stripping provisions such as § 1252(g) and § 1252(b)(9) may preclude judicial review, they are not applicable here.  Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g).  The Supreme Court has given § 1252(g) a "narrow reading," emphasizing that it does not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999).  And § 1252(b)(9) provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9).

Neither provision is applicable here because Petitioner is merely attacking Respondents' decision to treat him as an *applicant for admission* under § 1225(b).  *See, e.g., Gomez-Pena v. Sec'y, Dep't of Homeland Sec.*, No. 3:25-cv-1287, 2026 WL 83980, at *2–3 (M.D. Fla. Jan. 12, 2026) (finding that petitioner's claims are not barred by 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9) because petitioner is not attacking "ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal" nor is he "seeking to challenge the decision to seek removal or the process by which removability will be determined"); *Boffill v. Field Off. Dir.*, No. 25-25179, 2025 WL 3246868, at *2–4 (S.D. Fla. Nov. 20, 2025) (same).

Accordingly, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-20217, 2026 WL 496726, at *3 (S.D. Fla. Feb. 23, 2026).

## II. Petitioner has not failed to exhaust his administrative remedies.

Respondents ask the Court to dismiss the Petition because Petitioner has failed to exhaust his administrative remedies. Specifically, Respondents state that because "Petitioner's removal proceedings are pending, [] he has not availed himself of the administrative process and remedies available to him[.]" Resp. at 11. Petitioner, however, maintains that prudential exhaustion should be excused because "[t]he result of any administrative appeal is therefore a foregone conclusion" in light of the precedential decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which held that anyone who has entered the United States without inspection is considered an *applicant for admission* who is *seeking admission* and therefore subject to mandatory detention under Section 1225(b)(2)(A). Pet. ¶ 29. Petitioner is correct.

It is well-established that "exhaustion is not required where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile[.]" *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (internal citations omitted); *see also United States v. Barbieri*, No. 18-cr-20060, 2021 WL 2646604, at *2 (S.D. Fla. June 28, 2021) ("The Court recognizes . . . that administrative exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief."). Here, as Petitioner points out, *Matter of Yajure Hurtado* is a "precedential decision" and "such decisions 'serve as precedents in all proceedings involving the same issue or issues.'" *Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535, 2025 WL 2938369, at *2 (S.D. Fla. Oct. 15, 2025) (quoting 8 C.F.R. § 1003.1(g)(2)).

Thus, because *Matter of Yajure Hurtado* forecloses the relief that Petitioner seeks, the Court joins the numerous other courts in this District that have held that "any prudential exhaustion requirements are excused for futility."  *Id*.; *see also Mejia v. Lyons*, No. 26-60258, 2026 WL 914753, at *2 (S.D. Fla. Apr. 3, 2026) ("This Court concurs with the majority of district courts that have addressed the issue that administrative exhaustion would have been futile in these circumstances and that a failure to exhaust does not strip this Court of jurisdiction over the Petition."); *Gonzalez v. Noem*, No. 25-CV-62261, 2025 WL 4053421, at *3 (S.D. Fla. Dec. 23, 2025), *report and recommendation adopted*, No. 25-62261, 2026 WL 115211 (S.D. Fla. Jan. 15, 2026) ("Given that *Matter of Yajure Hurtado* is binding precedent on immigration judges and subjects Petitioner, a non-citizen who is present in the United States and has not been admitted or paroled, to mandatory detention without the possibility of bond, there is no adequate administrative remedy for Plaintiff.  The Court, like countless other courts in this District and around the country, concludes that Petitioner should not have to exhaust his administrative remedies before seeking habeas relief.").

### III.  Petitioner is properly detained pursuant to § 1225(b)(2) and is therefore not entitled to a bond hearing.

Respondents maintain that Petitioner's detention is lawful pursuant to § 1225(b)(2). Specifically, Respondents contend that the plain language of § 1225(b)(2) mandates detention of applicants for admission; that applicants for admission under § 1225(b)(2) are seeking to be legally admitted into the United States; that the Government's reading comports with Congressional intent and accords with the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018); and that § 1226 does not support Petitioner's argument.  *See* Resp. at 3–11.  Petitioner, however, maintains "§ 1226(a), not § 1225(b)(2), governs detention of noncitizens who entered without inspection and were later apprehended in the interior."  Pet. ¶ 34.

This Court's opinion in *Rocha Vargas v. Miami Federal Detention Center* is instructive here, as the Court addressed whether a similarly situated petitioner was detained pursuant to § 1225 or § 1226.  No. 25-CV-25966-RAR, 2026 WL 911291, at *2 (S.D. Fla. Apr. 2, 2026).  After carefully analyzing competing interpretations of § 1225 and § 1226, this Court concluded that "Petitioner [was] properly detained pursuant to § 1225(b)(2) and [was] therefore not entitled to a bond hearing."  *Id*. at *1–2.  Accordingly, for the reasons explained herein, Petitioner is similarly detained pursuant to § 1225(b)(2).

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), an "alien[] treated as an applicant[] for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . . )[.]"  8 U.S.C. § 1225(a)(1).  And "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  *Id*. § 1225(b)(2)(A).  While § 1225(b)(2)(A) does not, under any circumstances, permit the Government to release detained aliens on bond, under § 1226 "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . [and] the Attorney General . . . [] may release the alien on [] bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General[.]"  *Id.* § 1226(a).  Accordingly, the question is whether an alien who enters the United States without inspection and who has been physically present and living in the United States for a number of years is subject to mandatory detention under § 1225(b)(2)(A), without access to a bond hearing, or § 1226(a), which requires an individualized bond determination.

As this Court explained in *Rocha Vargas*, the Petition presents a question of statutory interpretation that has divided courts across the country.  *See Rocha Vargas*, 2026 WL 911291, at

*3 (collecting cases).  The Fifth and Eighth Circuits have considered the very question presented by the Petition, and have concluded that aliens like Petitioner are detained pursuant to § 1225(b)(2)(A).[2]  *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) (finding that 8 U.S.C. § 1226(a) does not apply to petitioners, given that "[t]he text and context of § 1225 contradict the petitioners' reading of the statute.");  *Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *6 (8th Cir. Mar. 25, 2026) ("[T]he district court erred in holding that the Government could not detain [petitioner] without bond under § 1225(b)(2)(A) and in granting habeas relief on that basis.").  However, the Second Circuit recently came to the opposite conclusion, finding that "Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *5 (2d Cir. Apr. 28, 2026).

Petitioner points to the Government's "30-year interpretation of § 1225(b)(2) as inapplicable to interior noncitizens" and highlights its longstanding practice of detaining similarly situated aliens pursuant to § 1226.  *See* Pet. ¶ 59.  However, while "longstanding practice . . . can inform a court's determination of what the law is" it "does not justify a rule that denies statutory text its fairest reading."  *Chen v. Almodovar*, No. 25 CIV. 9670 (JPC), 2026 WL 100761, at *13 (S.D.N.Y. Jan. 14, 2026) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024)

---

[2]  The Seventh Circuit discussed this question of statutory interpretation in the context of an order enjoining the Department of Homeland Security from making warrantless arrests of noncitizens, which is *not* the issue before this Court.  *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–61 (7th Cir. 2025).  But the Seventh Circuit noted that "Plaintiffs have the better argument on the current record" as to the question of "whether § 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders[.]"  *Id.* at 1061.

While the Eleventh Circuit has not yet weighed in on this question, it is currently under advisement; indeed, oral argument was held on March 26, 2026.  *See* Oral Argument, *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, et al.*, No. 25-14065 (11th Cir. Mar. 26, 2026), ECF No. 68.

and *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015)).[3] Accordingly, a fulsome analysis of the text and purpose of the competing statutory provisions is warranted. And, while "[b]oth sides present plausible readings of the statutory text[,]" *Alvarez v. Noem,* No. 3:26-CV-73, 2026 WL 545382, at *2 (W.D. Pa. Feb. 26, 2026), the Court concludes that the Government's position presents the more compelling interpretation.

As explained in *Rocha Vargas*, under § 1225(b)(2)(A), an alien can be detained without bond if he is "an applicant for admission" and "if the examining immigration officer determines that [the] alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added). *See Rocha Vargas*, 2026 WL 911291, at *4. Here, Petitioner is both an applicant for admission *and* seeking admission pursuant to § 1225.

*First*, Petitioner is properly considered an applicant for admission under § 1225(a)(1). An alien is "deemed for purposes of this chapter an applicant for admission" where they are "present in the United States [and] ha[ve] not been admitted or [have] arrive[d] in the United States (whether or not at a designated port of arrival . . . )". 8 U.S.C. § 1225(a)(1). "As with any question of statutory interpretation, [the Court's] analysis begins with the plain language of the statute." *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009); *see also BellSouth Telecomm'ns, Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1187 (11th Cir. 2001) ("When interpreting a statute, 'it is axiomatic that a court must begin with the plain language of the statute.'" (quoting *United States v. Prather*,

---

[3]  For similar reasons, the Court rejects Petitioner's claim regarding "impermissible retroactive reclassification of detention authority," which argues that the Government's longstanding interpretation as well as "its grant of conditional release, employment authorization, and participation in the asylum process to Petitioner . . . created substantial reliance interests that cannot be extinguished retroactively." Pet. ¶ 59. This argument "is wrong, particularly in the immigration context." *Liang v. Almodovar*, No. 1:25-CV-09322-MKV, 2025 WL 3641512, at *3 (S.D.N.Y. Dec. 15, 2025). Specifically, the Supreme Court has held that "[u]nder Article II, the Executive Branch possesses authority to decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law", *see United States v. Texas*, 599 U.S. 670, 678–79 (2023) (internal quotations omitted), and that "[a]gencies are [instead] free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

205 F.3d 1265, 1269 (11th Cir. 2000)).  Here, the plain language suggests that Petitioner is an applicant for admission because he is currently present in the United States and has not yet been lawfully admitted.  Accordingly, because "[p]resence without admission deems [] petitioners to be applicants for admission[,]" Petitioner falls squarely within the definition of "applicant" for purposes of § 1225(a)(1).  *Buenrostro-Mendez*, 166 F.4th at 502.

Second, the Court finds that Petitioner is seeking admission pursuant to § 1225(b)(2)(A). This presents a more complicated question of statutory interpretation, requiring an analysis of whether the terms *applicant for admission* and *seeking admission* are synonymous in nature.  A number of courts have read the term *seeking admission* to apply to only a subset of applicants for admission—not to <u>all</u> *applicants for admission*.  *See Kashranov v. Jamison*, No. 2:25-CV-05555-JDW*, 2025 WL 3188399, at \*6 (E.D. Pa. Nov. 14, 2025) ("While [petitioner] is an applicant for admission, he is not seeking admission.  He's already here.").  But the Fifth and Eighth Circuits have, to the contrary, found that "an applicant for admission to the United States is 'seeking admission' to the same, regardless [of] whether the person actively engages in further affirmative acts to gain admission."  *Buenrostro-Mendez*, 166 F.4th at 502; *see also Avila*, 2026 WL 819258, at \*3 ("[T]he structure of § 1225(b)(2)(A) does not indicate that 'seeking admission' is a separate requirement for detention under the statute.").  This Court's independent review of the plain meaning of the statute compels the same result.

"In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself.  Where, as here, that examination yields a clear answer, judges must stop."  *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) (citation omitted).  It is uncontroverted that the plain meaning of the terms *applicant for admission* and *seeking admission* is the same.  *See Avila*, 2026 WL 819258, at \*3.  Indeed, "[w]hen a person applies for something, they are necessarily seeking it."  *Buenrostro-*

*Mendez*, 166 F.4th at 502 (comparing the formal definitions of the terms "to apply" and "to seek"); *see also Candido v. Bondi,* No. 25-CV-867 (JLS), 2025 WL 3484932, at *3 (W.D.N.Y. Dec. 4, 2025) (explaining that "'applicant' and 'seeker' are, indeed, accepted synonyms" and because "there is no 'material variation' in meaning between these two terms[] there is no reason to apply interpretive canons").

Some courts have interpreted *seeking* to require present, affirmative action. *See, e.g., Kashranov*, 2025 WL 3188399, at *6 ("The phrase 'seeking admission' functions as a present participial modifier of the term 'alien' within the statute. . . . The present participle, expressed in the progressive '-ing' form, conveys ongoing and continuous action rather than a completed or static state."). However, to read *seeking admission* to apply only to those physically at the border ignores the complex realities of the United States immigration process. To gain legal admission into the United States is a lengthy, multifaceted procedure, requiring aliens like Petitioner to apply for admission, continuously supplement their application, and sit for multiple rounds of interviews. Therefore, it is an artificial construct to view those *seeking admission* as only the subset of applicants at an entry point to the United States.

*Lastly*, the Court acknowledges that there are meritorious arguments in opposition to this interpretation. Indeed, a common counter is that by interpreting *applicant for admission* as equivalent to *seeking admission*, the phrase *seeking admission* is rendered superfluous. But, as this Court explained in *Rocha Vargas*, this argument is unavailing. *See Rocha Vargas*, 2026 WL 911291, at *6 (finding that the broader statutory context does not render *seeking admission* superfluous because "[i]n the absence of any statutory text suggesting otherwise, it does not appear that Congress intended to ascribe independent meaning to the phrase *seeking admission*."). Nor is the Court persuaded by arguments grounded in congressional intent and the Government's longstanding practice. *Id*. at *7 (noting how the Government's interpretation better aligns with

IIRIRA's aims and that the Court's interpretation adheres to the statutory text rather than any arguments sounding in past practice).  Further, the Supreme Court's dicta in *Jennings v. Rodriguez,* 583 U.S. 281 (2018), is not dispositive here.  Some courts have found that this case reflects the Supreme Court's understanding that § 1225 applies to "aliens seeking admission"—while § 1226 applies to "aliens in the country."  *See, e.g.*, *Alvarez*, 2026 WL 545382, at *1.  However, others have noted that *Jennings* "does not foreclose the possibility that these categories overlap."  *See Rocha Vargas*, 2026 WL 911291, at *6 (citing *Buenrostro-Mendez*, 166 F.4th at 505).  Accordingly, because *Jennings* seemingly cuts both ways, the Court declines to hang its hat on *Jennings* in reaching its conclusion.

In sum, Petitioner is properly detained pursuant to § 1225.

**IV.  Petitioner's detention does not violate due process.**

Petitioner also argues that his detention violates due process, citing to the Supreme Court's opinion in *Zadvydas v. Davis*.  Pet. ¶ 59.  In *Zadvydas*, the Supreme Court has recognized two justifications for immigration confinement—preventing flight and preventing danger to the community.  533 U.S. 678, 690 (2001).  As such, Petitioner alleges a due process violation arising from his continued detention "lack[ing] any individualized determination of dangerousness or flight risk."  Pet. ¶ 53.

Petitioner agrees with Respondents that he has not identified a due process violation.  See Resp. at 16–17.  In *Zadvydas*, the procedural posture of the case was entirely different, given that it involved a "post-removal-period detention statute."  *See Zadvydas*, 533 U.S. at 683.  Here, Petitioner has not alleged that he is in post-removal proceedings.  And, even if he were, he has failed "to state a claim under *Zadvydas* [because he has not] show[n] post-removal order detention in excess of six months [nor has he] provide[d] evidence of a good reason to believe

that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

In *Demore v. Kim*, the Supreme Court addressed the constitutionality of the "detention of deportable criminal aliens *pending their removal proceedings*"—the procedural posture at issue here. 538 U.S. 510, 527 (2003). Finding "[d]etention during removal proceedings [to be] a constitutionally permissible part of that process," the Court considered and concluded that individuals like Petitioner could be detained without any finding as to whether they posed a flight risk or danger to society. *Id*. at 524–25. Here, Petitioner merely alleges that his detention without a bond redetermination hearing constitutes a due process violation, an argument that was clearly rejected in *Demore*. Accordingly, Petitioner's detention comports with due process.

### V. Petitioner's APA and *Accardi* claims fail.

Petitioner alleges that his detention violates 5 U.S.C. § 706(2)(A) and (D) and the *Accardi* doctrine. Pet. ¶ 45. Under § 706(2), courts are obligated to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law[,]" that is "contrary to constitutional right [or] power[,]" or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C. § 706(2).

As a threshold matter, habeas petitions are generally not a proper vehicle for an APA cause of action. Indeed, "[h]abeas has traditionally been a means to secure *release* from unlawful detention, but [Petitioner seemingly] invokes the writ . . . to obtain authorization to stay in this country." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020). Indeed, a number of courts, when presented with APA claims in a similar context, have noted that a habeas petition "is the wrong vehicle for the job." *Rodriguez Curbelo v. Noem*, No. 2:26-CV-749-KCD-NPM, 2026 WL 925638, at *5 (M.D. Fla. Apr. 6, 2026) (explaining that "[t]rying

to shoehorn a freestanding APA challenge into a habeas petition simply does not work . . . [because a] habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint."); *Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026) (rejecting Petitioner's APA claim because "Petitioners do not specifically seek any non-habeas relief and have not paid the required filing fee for any such claim.").

More fundamentally, claims under the APA are only reviewable where there is "final agency action for which there is no other adequate remedy in a court[.]" 5 U.S.C. § 704. But Petitioner here has not established final agency action because "detention does not constitute a final agency action[.]" *Hernandez v. Collins*, No. 1:26-CV-289, 2026 WL 673557, at *3 (W.D. Tex. Mar. 9, 2026). Moreover, "[Petitioner] has an adequate remedy [in a court]—the very habeas petition he filed to get through the courthouse doors." *Rodriguez Curbelo*, 2026 WL 925638, at *5; *see also Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring) (noting that "habeas corpus, not the APA, is the proper vehicle" because there is an "adequate remedy in a court[.]").

Even on the merits, Petitioner's APA claim must fail because, for the reasons explained herein, Petitioner's detention pursuant to § 1225 is not violative of the law or the Constitution. Accordingly, "[b]ecause Petitioner was classified and treated as the INA requires, the government has not acted arbitrarily or capriciously." *Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL, 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026).

Finally, Petitioner cannot assert an *Accardi* claim.  Petitioner claims that "[h]aving administered Petitioner's case under § 1226 for this entire period, the agency cannot now bypass the bond-hearing procedure that statute requires" because, under the *Accardi* doctrine, agencies are required to follow their own regulations.  Pet. ¶¶ 42-43 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954)).  Under this doctrine, "agency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court."  *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984), *aff'd*, 472 U.S. 846 (1985) (quotation omitted).

As evidence of the agency's deviation from its own regulations, Petitioner points to the fact that "DHS's own NTA placed Petitioner in § 240 removal proceedings—the procedural track governed by § 1226" and that "the government treated Petitioner under the § 1226 framework for approximately five years[.]" Pet. ¶ 43.  But "simply receiving a Notice to Appear for a § 240 hearing [does not] magically pull[] a noncitizen out of § 1225" in light of the statutory text. *Landaez-Castro v. Noem, et al.*, No. 2:26-CV-237-KCD-NPM, 2026 WL 1020855, at *2 (M.D. Fla. Apr. 15, 2026).  Because "Section 1225(b)(2)(A) commands that if an examining officer determines an applicant for admission is not 'clearly and beyond a doubt entitled to be admitted,' which are the facts here, 'the alien shall be detained for a proceeding under section 1229a.' [which] is the statutory codification of § 240." *Id*.

Thus, the agency does not appear to have deviated from its own regulations and, even if it had, "the Court would not grant the extraordinary remedy [Petitioner] seeks: outright release from custody." *Id.* (noting that how Petitioner "was initially taken into custody cannot override Congress's inescapable command that he must remain detained now."); *Acosta Gonzalez v. Noem*, No. 26-60781-CIV, 2026 WL 1077836, *4 (S.D. Fla. Apr. 20, 2026) (rejecting *Accardi* claim because the Supreme Court has held that "if sufficient ground for [Petitioner's] detention

by the government is shown, he is not to be discharged for defects in the original arrest or commitment." (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 662 (1892)).

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Petitioner Lazaro Emanuel Avila Escobar's Petition for Writ of Habeas Corpus, [ECF No. 1], is **DENIED**.

2.  All deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**.

3.  The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 30th day of April, 2026.

_____

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**